IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

-----------------------------------------------------------x
                                                        :

LAFARGE BUILDING MATERIALS, INC.    :      3:15 CV 1203(JBA)
                                                     :

v.                                                  :

A. AIUDI & SONS, LLC, AIUDI CONCRETE, :
INC., AIUDI CT, LLC, OCTOBER           :
TWENTY-FOUR, INC., ELMO R. AIUDI,    :
CHRISTOPHER J. AIUDI, JANICE AIUDI, :
SANDRA AIUDI-DiVINCENZO, AND         :      DATE: OCTOBER 29, 2015
ALISON B. AIUDI                                 :
-----------------------------------------------------------x

## RULING ON PLAINTIFF'S APPLICATION FOR PREJUDGMENT REMEDY

On August 7, 2015, plaintiff Lafarge Building Materials, Inc., a corporation with its executive offices in Chicago, Illinois, commenced this diversity action against defendants A. Aiudi & Sons, LLC ["Sons"], Aiudi Concrete, Inc. ["Aiudi Concrete"], Aiudi CT, LLC ["Aidui CT"], October Twenty-Four, Inc. ["October Twenty-Four"], and five members of the Aiudi family, all of whom are residents of Connecticut, to collect monies due and owing to plaintiff relating to its sales and deliveries of bulk quantities of cement and other similar products for the benefit of defendants. (Dkt. #1).[1]  Defendants filed their answer with affirmative defenses on October 13, 2015. (Dkt. #29).

On September 16, 2015, plaintiff filed the pending Motion for Prejudgment Remedy. (Dkt. #14).[2] On the same day, plaintiff also filed a Motion for Disclosure of Assets. (Dkt.

---

[1] A copy of plaintiff's Complaint was admitted during the hearing as Plaintiff's Exh. 2.

[2] Attached to plaintiff's motion is a copy of a [Proposed] Order After Hearing, an Order for Hearing and Notice, and an affidavit of Charles Pillivant, Jr. ["Pillivant Aff't"]. Attached to the Pillivant Aff't is a copy of a Promissory Note, signed October 28, 2011 ["Promissory Note"] (Exh. A); a copy of payment schedule made by defendant Sons on account of the Promissory Note prior to July 31, 2015 (Exh. B); and a copy of defendants' Unconditional Joint and Several Guaranty of Payment, signed October 28, 2011 ["Guaranty"](Exh. C).

#15). The next day, these two motions were referred to this Magistrate Judge from U. S. District Judge Janet Bond Arterton. (Dkt. #16). On October 8, 2015, defendants filed their objection. (Dkt. #26).[3] The next day, an evidentiary hearing was held before this Magistrate Judge, at which Charles Pillivant, Jr.[4] and Sandra Aiudi-DiVincenzo[5] testified. (See Dkts. ##27-28, 30).

On October 19, 2015, defendants filed their post-hearing brief (Dkt. #32), and plaintiff filed its post-hearing brief with exhibits in support. (Dkt. #33).[6] Two days later, plaintiff filed its reply brief (Dkt. #34),[7] and on October 23, 2015, defendants filed their reply brief. (Dkt. #35).

For the reasons stated below, plaintiff's Motion for Prejudgment Remedy (Dkt. #14) is granted in the amount of $523,809.44.

---

The foregoing filings were admitted during the hearing as Plaintiff's Exh. 1.

[3]Attached is a copy of the Statutory Mortgage Deed ["Mortgage Deed"], executed October 28, 2011 (Exh. A); and a copy of Appraisal Report for 8809 Settlement Road and 8885 South Ridge Road, Farmington, Connecticut, dated July 15, 2014 ["Appraisal Report"](Exh. B).

[4]Charles Pillivant, Jr. is the Credit Manager of LafargeHolcim, Inc., its domestic operating subsidiary, Larfarge North American, Inc., and its affiliate, the plaintiff in this case, Lafarge Building Materials, Inc. (Pillivant Aff't ¶ 1; Transcript, dated October 9, 2015 ["Tr."] 17-18). Pillivant has been responsible for managing Lafarge's accounts receivable for the Aiudi companies since 2002. (Tr. 18).

[5]Sandra Aiudi-DiVincenzo is a member of the Aiudi family, is a named defendant in this case, and, as she described it, is responsible for "a little bit of everything: [p]ayables, receivables, collections" for defendant Sons. (Tr. 52).

[6]Attached to plaintiff's brief is a copy of the Loan Agreement, entered June 11, 2014 (Exh. A); and a copy of unreported cases (Exh. B).

[7]Attached to plaintiff's reply is a copy of case law.

I. DISCUSSION

A. FACTUAL BACKGROUND

1. PROMISSORY NOTE AND GUARANTY

The parties in this case have transacted business for many years, during which times greater and lesser balances due plaintiff were maintained. (Pillivant Aff't ¶ 3). In October 2011, defendant Sons executed a Promissory Note for the principal amount of $1,100,000.00, payable in eighty-three consecutive monthly installments, and guaranteed by each of the named defendants in this case. (Id. ¶ 4 & Promissory Note; see Tr. 19-20).

Also in October 2011, each defendant made and delivered to plaintiff an Unconditional Joint and Several Guaranty of Payment, pursuant to which each of the signatories guaranteed:

> (i) the full and prompt payment of all amounts which may be presently due and owing, and all sums which shall in the future become due and owing, and all sums which shall in the future become due and owing to Lafarge from [Aiudi Concrete, Aiudi CT and/or Sons]; (ii) the due performance by [Sons] of all of its obligations under the Note; (iii) the due performance by each Obligor of all its obligations under and pursuant to the Supply Agreements, the Letter Agreement and under all other present and future agreements or undertakings by any such Obligor to or in favor of Lafarge; and (iv) all out-of-pocket expenses (including reasonable attorneys' fees and disbursement) which are incurred by Lafarge in enforcing any rights with respect to, or in the collection of, any or all of the foregoing obligations of any Obligor or which are incurred by Lafarge in enforcing or collecting upon this Guaranty (the "Expenses"). This guaranty constitutes a guarantee of payment, and not of collection.

(Pillivant Aff't ¶ 13 & Guaranty, at 2).

Defendant October Twenty-Four secured its guaranty with a Statutory Mortgage Deed on property owned by it on behalf of defendant Sons, located at 8885 South Ridge Road and 8809 Settlement Road in Farmington, Connecticut ["Mortgaged Property"]. (Dkt. #26, at 3, ¶ 6 & Statutory Mortgage Deed). The Statutory Mortgage Deed secures payment of the

3

lesser of "([a]) THREE MILLION ($3,000,000.00) DOLLARS AND (b) all sums due Mortgagee by Mortgagor under and pursuant to" the Guaranty. (Statutory Mortgage Deed)(emphasis in original). According to the Appraisal Report prepared by Buckley Appraisal Services, Inc., dated July 15, 2015, the Mortgaged Property, containing 107.10 acres, is worth $1,715,000.00. (Dkt. #26, at 4, ¶ 7 & Appraisal Report; see also Tr. 28-29, 31-32).[8]

### 2. DEFAULT

From September 2014, continuing through July 2015, at defendant Sons' specific request, plaintiff sold and delivered to defendant Sons quantities of cement in accordance with the terms of a confidential Cement Supply Agreement between these parties. (Pillivant Aff't ¶¶ 7-9). The cement sold has a value of $1,170,820.47. (Id. ¶ 7). Sandra Aiudi-DiVincenzo, a named defendant in this case, conceded that in June or July 2015, defendant Sons stopped paying in accordance with the agreed credit terms on its open sales account. (Tr. 56).[9] She also testified that "[p]robably [in] June of 2015[]" defendant Sons purchased cement from an entity other than plaintiff. (Tr. 61).

Additionally, Aiudi-DiVincenzo testified that defendant Elmo Aiudi, who is Aiudi-DiVincenzo's father (Tr. 53), and the principal owner of defendant October Twenty-Four (Tr.

---

[8] Pillivant testified at the hearing that he was aware that there was an offer to purchase the property for $1,100,000, but that defendants rejected such offer. (Tr. 29-30). As discussed further below, defendant Aiudi-DiVincenzo testified as to the existence of a lawsuit in state court attacking the validity of the October Twenty-Four mortgage, which has resulted in a lien/attachment placed on October Twenty-Four's property. (See Tr. 52-55).

[9] Aiudi-DiVincenzo explained that they stopped paying within the terms of the open sales account when plaintiff "lumped . . . two companies together[,]" in that when defendant Sons has "cash flow issues, and sometimes . . . could not pay[,]" plaintiff stopped shipping to Aiudi Concrete, which company "continually paid every week[,] . . . per the terms of what [plaintiff] agreed to." (Tr. 60).

She also testified that during the winter of 2013, defendant Sons stopped paying within the agreed upon terms of its open account. (Tr. 57).

10), is being sued by two of his sisters over the encumbered mortgage on October Twenty-Four's property. (Tr. 53-55). Aiudi-DiVincenzo is also a named defendant in that lawsuit, which is pending in the state court in Hartford. (Id.).

As of July 31, 2015, the unpaid principal balance due to plaintiff from defendant Sons under the Promissory Note was $1,170,820.47. (Pillivant Aff't ¶ 9; Tr. 22). Additionally, the amount unpaid in defendant Aidui Concrete's open account as of July 31, 2015 was $403,861.97. (Tr. 22-23).

### 3. ACCELERATION CLAUSE OF THE PROMISSORY NOTE

The Promissory Note reads: "If an Event of Default shall occur, . . . the outstanding principal balance and accrued interest hereunder, together with any additional amounts payable hereunder, may be accelerated and immediately due and payable without demand or notice of any kind . . . ." (Promissory Note, ¶ 7(b); see also Tr. 43-44). The terms of the Note provide that "[p]ayments received will be applied to charges, fees and expenses (including attorneys' fees), accrued interest and principal in any order Lafarge may choose, in its sole discretion." (Promissory Note, ¶ 1(a)). According to Pillivant, as of July 31, 2015, the unpaid principal amount of the Promissory Note had been reduced, by payments, to $523,809.44 (see id. ¶ 10; Exh. B; Tr. 21),[10] which sum, together with interest and the costs of collection in accordance with the terms of the Promissory Note, became immediately due and payable to plaintiff. (Pillivant Aff't ¶ 10; Tr. 31). Pillivant explained that the finance charges were "part of the note and security agreement, and [plaintiff's] rights under that security agreement[,]" (Tr. 41), and the accrued finance changes, due and owing to plaintiff,

---

[10]Despite Pillivant's affidavit and testimony that the unpaid principal amount due on the Promissory Note was $523,809.44 (see id.), plaintiff contends in its post-hearing brief that the accelerated amount due under the Promissory Note was $524,809.44. (Dkt. #33, at 6).

5

as of July 31, 2015, exceeded $275,000.  (Pillivant Aff't ¶ 12).

Defendant Aiudi-DiVincenzo, however, testified that plaintiff "has never charged us finance charges[,]" (Tr. 59),  even though in the past, and specifically in the winter of 2013, Sons stopped paying within the terms of the sixty-day payment plan it had with plaintiff.  (Tr. 56-57).[11]  However, Pillivant testified that defendants "were advised in correspondence from [plaintiff's] counsel, . . . when [plaintiff] reset the . . . sales terms of conditions, [defendants] were advised how the payments would be applied." (Tr. 42).

Pillivant acknowledged that he did not send a notice to defendants informing them that the Promissory Note was in default, although he testified that his counsel did so in May or June of this year.  (Tr. 39).  Defendant Aiudi-DiVincenzo testified that although she is responsible for "payables, receivables, [and] collections" for defendant Sons, she did not receive a notice of default from either plaintiff or plaintiff's counsel.  (Tr. 52, 63).

Moreover, defendants dispute the amount owed as they continued to make payments to plaintiff in accordance with an amortization schedule that plaintiff provided to defendants when the Promissory Note was signed.[12]  Pillivant testified that plaintiff received payments every month, for forty-seven months, up to and including the last payment made on or before August 21, 2015, which payment post-dated the July 31, 2015 date of default on the Promissory Note. (Tr. 37-38, 45). The amortization schedule reflects that the remaining balance after the forty-seventh payment would be $484,523.72. (Defendants' Exh. A; Tr. 38).

---

[11]Defendants contend that plaintiff has "never, since the date of the origination of the Promissory Note, mentioned, charged or collected from [defendant Sons] any finance charge(s). Accordingly, [p]laintiff has effectively abandoned or rescinded such term of the [Promissory Note]." (Dkt. #26, at 3, ¶ 4).

[12]This amortization schedule reflects the date payments were due, balance amount as of the respective dates,  payments, interest rate, amount applied to interest, amount applied to principal, additional paid principal, and remaining balance.  ( Defendants' Exh. A).

B. LEGAL STANDARD FOR A PREJUDGMENT REMEDY

A prejudgment remedy "is generally intended to secure the satisfaction of a judgment should plaintiff prevail." Cendant Corp. v. Shelton, No. 3:06 CV 854 (JCH), 2007 WL 1245310, at *2 (D. Conn. Apr. 30, 2007)(citation omitted).  Federal Rule of Civil Procedure 64 permits a plaintiff to utilize the state prejudgment remedies available to secure a judgment that might ultimately be rendered in an action. See Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda County, 415 U.S. 423, 436, n.10 (1974).  Pursuant to the Connecticut Prejudgment Remedy statute, CONN. GEN. STAT. § 52-278d(a), the standard for issuing a prejudgment remedy is probable cause, so that a prejudgment remedy is appropriate

> [i]f the court, upon consideration of the facts before it and taking into account any defenses, counterclaims or set-offs, claims of exemption and claims of adequate insurance, finds that the [movant] has shown probable cause that such a judgment will be rendered in the matter in the [movant's] favor in the amount of the prejudgment remedy sought . . . .

CONN. GEN STAT. § 52-278d(a).  In the words of U.S. District Judge Alvin W. Thompson:

> The legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it. Probable cause is a flexible common sense standard.  It does not demand that a belief be correct or more likely true than false.

Qualitative Reasoning Sys., Inc. v. Computer Scis. Corp., No. 3:98 CV 554 (AWT), 2000 WL 852127, at *10 (D. Conn. Mar. 31, 2000)(internal quotations & multiple citations omitted).

A prejudgment remedy proceeding is "only concerned with whether and to what extent the plaintiff is entitled to have property of the defendant held in the custody of the law pending adjudication of the merits of that action." Benton v. Simpson, 78 Conn. App. 746, 751-52, 829 A.2d 68, 72-73 (App. Ct. 2003)(citation & internal quotations omitted).

Further, while a prejudgment remedy hearing "is not contemplated to be a full scale trial on the merits of plaintiff's claim[,]" <u>Bank of Boston Conn. v. Schlessinger</u>, 220 Conn. 152, 156 (1991)(multiple citations & internal quotations omitted), a plaintiff is "bound to furnish proof of his damage with reasonable probability, and not leave the trial court to speculation and conjecture." <u>Mullai v. Mullai</u>, 1 Conn. App. 93, 95, 468 A.2d 1240, 1242 (App. Ct. 1983)(per curiam).  After a hearing, the Court must "consider not only the validity of the plaintiff's claim but also the amount that is being sought." <u>Calfee v. Usman</u>, 224 Conn. 29, 38 (1992)(citation & internal quotations omitted).  Additionally, the Court must "evaluate not only the plaintiff's claim but also any defenses raised by the defendant." <u>Balzer v. Millward</u>, Civ. No. 3:10 CV 1740(SRU)(HBF), 2011 WL 1547211, at *1 (D. Conn. Apr. 21, 2011), <u>quoting Haxhi v. Moss</u>, 25 Conn. App. 16, 20 (App. Ct. 1991)(citation omitted).  <u>See also Corey v. Hawes</u>, No. 14 CV 1266(JAM), 2015 WL 5472507, at *7-8 (D. Conn. Sept. 17, 2015)(multiple citations omitted).

### C. PROBABLE CAUSE

Plaintiff's application for prejudgment relief turns upon whether plaintiff has shown "probable cause" that a judgment will enter in its favor.  CONN. GEN. STAT. § 52-278(d)(a)(1). "Probable cause"  has been defined by the Connecticut courts as "'a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it.'" <u>Walpole Woodworkers, Inc. v. Atlas Fencing, Inc.</u>, 218 F. Supp. 2d 247, 249 (D. Conn. 2002), <u>quoting Three S. Development Co. v. Santore</u>, 193 Conn. 174, 175, 474 A.2d 795 (1984)(citation omitted).  The standard of "probable cause" is less demanding than the "preponderance of the evidence" or the "likelihood of success" standards.  <u>Cendant Corp.</u>,

2007 WL 1245310 at *3.  Plaintiff need not "prove its case by a preponderance of the evidence, but must show that there is probable cause to sustain the validity of its claim." Walpole Woodworkers, 218 F. Supp. 2d at 249 (citation omitted).  "In ordering a prejudgment remedy of attachment, the court must only find that 'there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater . . . will be rendered in the matter in favor of the plaintiff.'" Metal Mgmt., Inc. v. Schiavone, 514 F. Supp. 2d 227, 237 (D. Conn. 2007), quoting CONN. GEN. STAT. § 52-278d(a)(1).

In this case, probable cause exists that plaintiff will establish that defendants are in default of the Promissory Note. Section 7(a) of the Promissory Noted provides that an "Event of Default" under the note occurs with any of the following events:

> (ii) the filing by or against Aiudi & Sons or any Guarantor of any proceeding in bankruptcy, receivership, insolvency, reorganization, liquidation, conservatorship or similar proceeding . . . ; (iii) any assignment by Aiudi & Sons or any Guarantor for the benefit of creditors, or there is a levy, garnishment, attachment or any similar proceeding is instituted against any property of Aiudi & Sons or any Guarantor; . . . (vii) the failure of Aiudi & Sons to pay when due any sums due Lafarge (or any of its subsidiary of affiliated entities) on account of any sales of cement by Lafarge to Aiudi & Sons from and after June 1, 2011; (viii) a default by Aiudi & Sons, Aiudi, Inc., Aiudi CT or any Guarantor under any instrument or agreement under or subject to which any of them have incurred or are obligated for any debt . . . ; (ix) the breach or non-performance by Aiudi & Sons, Aiudi, Inc., or Aiudi CT of any obligation on any of their parts to be performed under and pursuant to those certain Cement Supply Agreement . . . .

(Promissory Note, ¶ 7(a)).  Defendants have not disputed that in June or July 2015, defendant Sons stopped paying plaintiff in accordance with the agreed credit terms on its open sales account (Tr. 56);[13] defendants acknowledged that "[p]robably [in] June of 2015[]" defendant Sons purchased cement from an entity other than Lafarge (Tr. 61); and

---

[13] See note 9 supra.

defendants have acknowledged that there is a lawsuit pending in state court challenging the validity of the October Twenty-Four mortgage, from which there is a lien or attachment on October Twenty-Four's property. (Tr. 53-55). Accordingly, plaintiff has established probable cause that it will succeed on its claim that defendants are in default under the terms of the Promissory Note.

### D. DAMAGES

The damages that plaintiff claims "need not be established with precision but only on the basis of evidence yielding a fair and reasonable estimate." Savalle v. Kobyluck, No. 3:00 CV 675 (WWE), 2001 WL 1913746, at *2 (D. Conn. Sept. 21, 2001)(citations & internal quotations omitted). Initially, plaintiff sought a prejudgment remedy in the amount of $523,809.44. (Pillivant Aff't ¶ 15). In response, defendants argued that a "prejudgment remedy is not necessary . . . [as defendant Sons] continues to make payments and is current on the Promissory Note," and the amount sought by plaintiff is "more than adequately insured by virtue of a Statutory Mortgage Deed on property having a value far in excess of the prejudgment remedy sought." (Dkt. #26, at 1).

As the late U.S. District Judge Mark R. Kravitz explained, "[s]tate and federal court judges in Connecticut have uniformly rejected the argument that when a loan is adequately secured by an interest in property from a borrower, a creditor cannot seek a prejudgment remedy against a different individual who personally guaranteed repayment of the amount the creditor loaned to the borrower." Bank of America, NA v. Klein, 774 F. Supp. 2d 426, 430 (D. Conn. 2011), citing CapitalSource Finance LLC v. Autorino, No. 3:09 CV 2148 (RNC), 2011 WL 1195857, at *6 (D. Conn. Mar. 11, 2011); see also Wachovia Bank, N.A. v. Cummings, No. 3:09cv957(SRU), 2010 WL 466160, at *8-9 (D. Conn. Feb. 8, 2010)["Cummings"]("[T]he

10

Guarantee permits a cause of action separate and independent from the mortgages executed. Thus, Wachovia is not required to proceed first against the [p]roperty and the entity that executed the mortgages, regardless of the value of that property as security for the notes. . . . The parties could have required the lender to exhaust the collateral security [in the] notes before pursuing its available remedy under the [Guarantee], <u>but they did not</u>.") (emphasis added, quotations and citations omitted)(additional citations omitted).  Rather, a prejudgment remedy can be sought against a different individual who personally guaranteed repayment of a loan, and "the fact that the [Promissory Note] [may] already [be] adequately secured [by the Statutory Mortgage Deed entered into by defendant October Twenty-Four, Inc.] does not make a PJR inappropriate in this case." <u>Cummings</u>, 2010 WL 466160, at *8.  Moreover, in concluding that the plaintiff does not have to first proceed against the mortgaged property, U.S. District Judge Stefan R. Underhill recognized in <u>Cummings</u> that "[t]he appraised value of the [mortgaged property] . . . does not reflect the transaction costs to [the bank] . . . [,] nor the value the [mortgaged property] will actually realize upon sale[.]" <u>Id</u>.  In this case, the Guaranty specifically provides that plaintiff "shall not be obliged to proceed first against any Obligor or against any collateral security owned by Obligor or held by Lafarge[,]" with a carve out made for the liability of defendant October Twenty-Four only.  (Guaranty at 2).  Moreover, Pillivant testified, and defendants did not challenge, that the market value of the secured property is not more than $1.1 million, <u>see</u> note 8 <u>supra</u>, and defendant Aiudi-DiVincenzo admitted in her testimony that the validity of October Twenty-Four's mortgage in favor of plaintiff is being challenged in a lawsuit pending in state court.

Moreover, plaintiff has established, by the explicit terms of ¶ 7(b) of the Promissory

11

Note, that the Promissory Note "may be accelerated and immediately due and payable without demand or notice of any kind[.]" (At 5).[14] Accordingly, it is of no consequence that plaintiff did not produce evidence of issuing a notice of default or demand on defendants[15] as such notice was not required. See Conn. Fin. Auth. v. John Fitch Court Assocs. Ltd. P'ship, 49 Conn. App. 142, 150 (App. Ct.)("It is well established that the exercise of an acceleration clause is proper upon an event of default as provided for and controlled by the terms of the note . . . ."), certif. denied, 247 Conn. Conn. 908 (1998). Accordingly, the remaining issue is the amount subject to the prejudgment remedy.

Defendants contend that the evidence establishes an amount due of only

---

[14]In this case, the Promissory Notes provides:

> If an Event of Default shall occur and continue without cure for more than ten (10) days, the outstanding principal balance and accrued interest hereunder, together with any additional amounts payable hereunder, may be accelerated and immediately due and payable without demand or notice of any kind; it being understood, however, that any provision of the foregoing to the contrary nothwithstanding, if an Event of Default . . . shall occur and there is no other or simultaneous Event of Default then existing, arising or continuing, if the unpaid installment of principal or interest giving rise to such Event of Default is not paid so as to be received and collected by Lafarge within forty-five (45) days of when originally due, then the outstanding principal balance and accrued interest due hereunder may be accelerated and immediately due and payable, without further notice of demand or notice of any kind. The obligations under this Note will bear interest at the Default Rate from and after the date of the occurrence of an Event of Default.

Promissory Note, ¶ 7(b).

[15]As discussed above, Pillivant testified that defendants "were advised in correspondence from [plaintiff's] counsel, . . . when [plaintiff] reset the . . . sales terms of conditions, [defendants] were advised how the payments would be applied." (Tr. 42). Pillivant acknowledged that he did not send a notice to defendants informing them that the Promissory Note was in default, although he testified that his counsel did so in May or June of this year. (Tr. 39).

Defendant Aiudi-DiVincenzo testified that although she is responsible for "payables, receivables, [and] collections" for defendant Sons, she did not receive a notice of default from either plaintiff or plaintiff's counsel. (Tr. 52, 63). Accordingly, defendants contend that plaintiff failed to provide proof of "any affirmative action evidencing its election to take advantage of the accelerating provision within the Promissory Note[.]" (Dkt. #32, at 9).

$484,523.72, which amount "continues to decrease as payments are made[.]" (Dkt. #32, at 9). Conversely, plaintiff initially sought the entry of a prejudgment remedy in the amount of $523,809.44, but contends that the hearing testimony and Pillivant's affidavit "prove that [plaintiff] is owed in excess of $2 million in principal pursuant to the [Promissory] Note, open account sales and Guaranty." (Dkt. #33, at 12)(footnote omitted). Plaintiff asserts that it could "amend its PJR application at the PJR hearing[,]" and that plaintiff has done so by establishing that the "total amount of the debt . . . [is] in excess of $2 million[.]" (Id. at 13-14 & n.6).

Defendants appropriately observe that both cases upon which plaintiff relies for its position that it may amend its PJR application at the probable cause hearing are distinguishable from the case at hand. (Dkt. #35, at 4-5, discussing Dkt. #33, at 9-10, citing State v Sunrise Herbal Remedies, Inc., 296 Conn. 556 (2010); Rafferty v. Noto Bros. Constr., LLC, 68 Conn. App. 685 (App. Ct. 2002)). In Sunrise Herbal Remedies, the Connecticut Supreme Court acknowledged a "decifienc(y)" in plaintiff's application in that the affidavit itself was "insufficient to establish probable cause[.]" 296 Conn. at 570. The Connecticut Supreme Court held that in such a case, "a plaintiff may introduce additional evidence to buttress the initial affidavit at the probable cause hearing pursuant to [CONN. GEN. STAT.] § 52-578e(e)." Id., citing Glanz v. Testa, 200 Conn. 406, 408-10 (1986)(when an affidavit offered in support of a prejudgment remedy application is "inadequate to establish probable cause[,]" the plaintiff may present evidence at a hearing supplementing the facts set forth in the initial prejudgment remedy affidavit)[16]; Doe v. Rapoport, 80 Conn. App. 111, 117 (App. Ct. 2003)("We see no reason why the plaintiffs in this case should not be permitted to use

---

[16]In Glanz, the additional evidence was submitted at a hearing on a motion to dissolve the prejudgment attachment. See id. at 408-09.

evidence at the hearing to buttress the facts contained in the affidavit"); Lengyel v. Lengyel Builders, Inc. v. Hill, 1 Conn. App. 349, 351 (App. Ct. 1984)(finding that the lower court "erred in ordering the original attachment because the affidavit submitted was devoid of any allegations upon which the court could determine probable cause for the amount of damages sought[,]" however, proof of such probable cause was established at the hearing to dissolve or modify the attachment).  Thus, Sunrise Herbal Remedies, and the cases relied upon therein, hold that a party may supplement or amend its application for a prejudgment remedy of attachment when the affidavit offered in support thereof is deficient to establish probable cause.

The Rafferty case is also distinguishable from the case at hand.  In that case, the plaintiffs filed an application for prejudgment remedy requesting injunctive relief, namely, that the defendants vacate the contested property pending the outcome of the litigation. Rafferty, 68 Conn. App. at 687.  "The court, recognizing that injunctive relief can not be granted within the purview of the prejudgment remedy statutes, allowed the plaintiffs to orally amend their request for relief at the prejudgment remedy hearing and to seek an order of attachment."  Id. (footnote omitted).  Notably, "defendants did not object to going forward on the amended application and were sufficiently prepared for the hearing as carried out . . . ."  Id. at 689.  Accordingly, the Connecticut Appellate Court concluded that "it was not an abuse of the court's discretion to allow the plaintiffs to orally amend their application and to entertain the amended application at the prejudgment remedy hearing."  Id. (citation omitted).

As discussed above, the affidavit in this case was sufficient to establish probable cause on the basis of a default on the Promissory Note.  In this case, eliciting testimony

14

beyond what is established in the affidavit does not equate amendment of the prejudgment remedy application. Stated another way, just because the testimony offered at the hearing went beyond the damages owed in the event of default under the Promissory Note does not mean that plaintiff has amended its prejudgment remedy application.[17] As discussed in the Rafferty case, "Connecticut's prejudgment remedy statutes were adopted in response to a line of United States Supreme Court cases prescribing the standards of procedural due process in the area of property rights, foremost among them the opportunity to be heard at a meaningful time and in a meaningful manner." Id. at 691-92 (multiple citations & footnote omitted). Defendants were not provided requisite notice on the increased amount plaintiff now seeks, nor were they provided a hearing on that amount. Accordingly, plaintiff's prejudgment remedy application is limited to the amount sought in its application.

In this case, plaintiff has "furnish[ed] proof of [its] damage with reasonable probability." Mullai, 468 A.2d at 1242. The language of the Promissory Note explicitly provides for the acceleration of the "outstanding principal balance and accrued interest." (Promissory Note, ¶ 7(b)). While the testimony of defendant Aiudi-DiVincenzo disputes the applicability of Section 2 of the Promissory Note in that she testified that plaintiff "has never charged us finance charges[,]" (Tr. 59),[18] Section 2 of the Promissory Note provides that "[p]ayment received will be applied to charges, fees and expenses (including attorneys' fees), accrued interest and principal in any order Lafarge may choose, in its sole discretion." (Promissory Note ¶ 2)(emphasis added). Accordingly, probable cause exists for the entry of

---

[17]At the hearing, defense counsel objected to questioning beyond establishing the amount sought, which was the amount due under the Promissory Note. (Tr. 23-27). This Magistrate Judge permitted the line of questioning, but ruled that "[w]hen we get to the ruling, we [may] ultimately disregard this testimony, but I think we should still . . . have it for at least now." (Tr. 27).

[18]See note 11 supra.

15

a prejudgment remedy in the amount sought by plaintiff of $523,809.44.

### B. MOTION FOR DISCLOSURE OF ASSETS

CONN. GEN. STAT. § 52-278n(c) provides that a "court may order disclosure at any time prior to final judgment after it has determined that the party filing the motion for disclosure has . . . probable cause sufficient for the granting of a prejudgment remedy." A disclosure of assets is appropriate in light of the probable cause determination, as discussed above. Cummings, 2010 WL 466160, at *9.  **On or before November 20, 2015**, defendants shall identify the existence, location and extent of any property, as defined by CONN. GEN. STAT. § 52-278a(e), sufficient to satisfy a total judgment in the amount of $523,809.44.

### II. CONCLUSION

For the reasons stated above, plaintiffs' Application for Prejudgment Remedy (Dkt. #14) is granted in the amount of $523,809.44.

This is not a Recommended Ruling, but a ruling on a non-dispositive motion,[19] the standard of review of which is specified in 28 U.S.C. § 636; FED. R. CIV. P. 6(a) & 72; and Rule 72.2 of the Local Rules for United States Magistrate Judges. As such, it is an order of the Court unless reversed or modified by the District Judge upon timely made objection.

See 28 U.S.C. § 636(b)**(written objection to ruling must be filed within fourteen calendar days after service of same)**; FED. R. CIV. P. 6(a) & 72; Rule 72.2 of the Local Rule for United States Magistrate Judges, United States District Court for the

---

[19]It has long been the rule in this district that a PJR application is a non-dispositive motion, and upon referral to a Magistrate Judge, does not require a recommended ruling. Aetna Life Ins. Co. v. Tooth Savers Dental Serv., No. 96 CV 102453(GLG), 1997 WL 102453, at *1 (D. Conn. Feb. 5, 1997). See also Corey, 2015 WL 5472507, at *11, n.29; Balzer v. Millward, 10 CV 1740 (SRU), 2011 WL 1547211, at *5, n.7 (D. Conn. Apr. 21, 2011); CapitalSource Fin. LLC v. Autorino, 09 CV 2148 (RNC), 2011 WL 1195857, at *1, n.1 (D. Conn. Mar. 11, 2011); United of Omaha Life Ins. Co. v. Conn. Student Loan Found'n, 718 F. Supp. 2d 277, 286 (D. Conn. 2010).

District of Connecticut; Small v. Secretary of HHS, 892 F.2d 15, 16 (2d Cir. 1989)**(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit)**.

Dated at New Haven, Connecticut, this 29th day of October 2015.

                                                                            /s/ Joan G. Margolis, USMJ_____
                                                                      Joan Glazer Margolis
                                                                      United States Magistrate Judge